67    505
81    532

[No. 9862.    Department One. — September 26, 1885.]

# THE FRESNO ENTERPRISE COMPANY, APPELLANT, *v.* WILLIAM H. ALLEN ET AL., RESPONDENTS.

CORPORATION — SECRETARY — BOND — LIABILITY ON. — In June, 1881, the defendant Allen was elected secretary of the corporation plaintiff for the term of one year, and until his successor should be elected and qualify. He thereupon executed to the plaintiff a bond with sureties in the penal sum of $10,000, to secure the safe-keeping and payment to it of all moneys that might come into his possession as secretary, and not paid out in the due course of business. The by-laws of the corporation authorized the board of directors to remove at pleasure all officers, and fix their terms of office. In June, 1882, Allen was re-elected, and the action was brought on the bond against him and his sureties to recover moneys alleged to have been misappropriated by him after his re-election. *Held*, that the action could not be maintained.

APPEAL from a judgment of the Superior Court of Fresno County.

The facts are stated in the opinion of the court.

*James Grant*, and *Wallace & Hastings*, for Appellant

The defendants were liable on the bond for a default of the principal occurring subsequent to his re-appointment as secretary. (*Placer County* v. *Dickinson*, 45 Cal. 12; *Anderson* v. *Longdin*, 1 Wheat. 85; *Amherst Bank* v. *Root*, 2 Met. 522; *Dedham Bank* v. *Chickering*, 3 Pick. 335; *U. S.* v. *Truesdale*, 1 Bond, 78; *Jacobs* v. *Hill*, 2 Leigh, 393; *Chairman of Common*

*Schools* v. *Daniel*, 6 Jones (N. C.) 444; *Sparks* v. *Farmers' Bank*, 3 Del. Ch. 274; *Supervisors of Omro* v. *Kaime*, 39 Wis. 468.)

*Garber, Thornton & Bishop*, for Respondents.

MCKINSTRY, J.—The action is on a bond, executed by the defendants, and which is in words and figures as follows:—

"Know all men by these presents, that we, William H. Allen, as principal, and James E. Bowe and John Haley, as sureties, are held and firmly bound to the Fresno Enterprise Company in the penal sum of $10,000, to the payment of which we bind ourselves and each of us.

"Given under our hands and seals the 1st day of September, 1881.

"The condition of this obligation is such, that, whereas, William H. Allen is secretary of the Fresno Enterprise Company, and as such, has, or may have, the custody of the moneys of said corporation; now if said William H. Allen shall duly preserve and keep all such funds as may come under his control or into his possession, and pay over to said company all such funds as he may not pay out in the due and lawful course of business, then this obligation to be void; otherwise to remain in full force.

| | | |
|---|---|---|
| [SEAL.] (Signed): | | "WM. H. ALLEN, |
| [SEAL.] | | "J. E. BOWE, |
| [SEAL.] | | "JOHN HALEY." |

The complaint is:—

"*First*—On the 4th day of June, A. D. 1881, William H. Allen was appointed by the board of directors of said Fresno Enterprise Company, secretary of said corporation, to hold his office for one year and until his successor should be elected and qualified; that by the by-laws of said company the board of directors were empowered to appoint and remove at pleasure all officers, agents, and employees of the corporation, fix their tenure of office, prescribe their duties, fix their compensation, and require security for faithful service.

"*Second*—That at the annual election of officers in June, 1882, no successor to said Allen was elected, but he was con-

tinued as secretary until the further order of the board. A successor was elected and qualified in June, 1883.

"*Third*—That after said Allen's election, and about the 1st of September, 1881, said Allen, as principal, and said Bowe and Haley, as his sureties, executed and delivered to said company their joint and several bond or writing obligatory for the payment to said corporation of the sum of $10,000; and said bond had a condition thereunder written, which recited: 'That whereas said Allen is secretary of the Fresno Enterprise Company, and as such, has or may have the custody of the moneys of said corporation, now, if said Allen shall duly preserve and keep all such funds as may come under his control or into his possession, and pay over to said company all such funds as he may not pay out in the due and lawful course of business, this obligation to be void; otherwise, to remain in full force.'

"And for breach of the condition of said writing obligatory, the plaintiff says that on the 25th day of December, 1882, and on divers days and times between that day and the 1st of May, 1883, the said Allen received and had in his possession of the moneys of said company the sum of $4,500.60, which he has neglected and refused to account for and pay over to the treasurer of said company, the proper officer to receive the same, and upon demand made, neglects and refuses to account for or pay over the same to the proper officers of said company; that said Allen as secretary was the custodian of said bond, and has refused to deliver the same to his successor in office, and has lost or destroyed the same.

"The plaintiff tenders to the defendant such indemnity for the loss of said bond as this court may require, and annexes hereto a substantial copy thereof, marked Exhibit 'A.'

"*Fourth*—By reason of the premises, the said defendants, each of them, have become liable, and are bound to pay to said plaintiff the said sum of $4,500.60, with interest from the 1st of May, 1883, for which sum, with interest and costs, the plaintiff asks judgment."

The court below sustained a demurrer to the complaint, on the ground that the same shows the defendants are not liable on the bond for any part of the moneys mentioned in the complaint, because it appears from said complaint that said moneys were

not received, or in the possession of said William H. Allen "prior to the 25th day of December, 1882."

Official bonds are to be construed with reference to the *statutes* bearing on them, and the liability of the obligors on such bonds has been considered very fully in several cases in this court, notably in *Hubert* v. *Mendheim*, 64 Cal. 213. But as was said in that case with reference to bonds given to individuals and private corporations, "such matters are the subject of private contract, by which the parties may bind themselves in any manner or to any extent, not violative of public policy or positive statute." These private contracts are to be interpreted, like other private contracts, with reference to their language and the circumstances under which they were entered into.

On the 4th day of June, 1881, the defendant William H. Allen was appointed by the board of directors of the corporation, plaintiff, secretary, "to hold his office for one year and until his successor should be elected and qualified," but subject to and in view of a by-law of the company, which provided that the board of directors should have power "to remove at pleasure all officers, agents," etc.

The obligors knew when they executed the bond that William H. Allen would continue as secretary until June 4, 1882, unless he was sooner removed by the board of directors. They knew also that he might continue to serve after the 4th of June, 1882, and until his successor should be "elected and qualified." It is difficult to give any meaning to the word "qualified," in the connection in which it is used. It does not appear that by the charter or by-laws the secretary was obliged to take an *oath* (passing the circumstance that such an oath if required simply by a by-law would be extrajudicial), or that the charter or by-laws required the secretary to give bond. Yet a particular secretary could be required at any time to give bond as a condition to his retention of the office, and if the defendants voluntarily executed the instrument sued on, it was executed and delivered for a sufficient consideration. By its terms they were bound for the safe-keeping and proper disposition of the company's money which came into William H. Allen's hands. During what period? Up to the 4th of June, 1882 (unless he should be removed), and until his successor should be elected or

appointed. It is true the principal obligor did not have a vested right in the office for a definite period. But it is clear the contract was made with reference to the term to expire on the then next 4th of June, or when the successor should be named. The term was for a definite time — not rendered entirely indefinite by the circumstance that the directors expressly retained the right to remove in the meantime; a right to dismiss for sufficient cause would have been implied, had it not been expressly reserved.

There is no averment in the complaint that by the by-laws or charter the secretary's term of office is one year, or one year and until, etc., but only that the defendant was so appointed. His successor might be appointed to hold at the pleasure of the appointing power simply. If another person had been so appointed at the expiration of the year, there would remain no doubt that on such appointment being made, and the office turned over to the appointee, the liability of the obligors would have ceased as to time. William H. Allen could be and was appointed his own successor. In June, 1882, he "was continued as secretary until the further order of the board." The complaint avers that no successor was appointed, but the averment goes for naught if the order of the board was such appointment. The bond was executed with reference to the possible continuance of the defendant as secretary to June 4, 1882, and for a reasonable time beyond, within which a successor might be nominated. It is claimed that the order of the board "continuing Wm. H. Allen as secretary" had no greater effect than their silence would have had, and if they had not acted he would have continued as secretary until his successor was appointed or he was removed. It may be doubted whether the plaintiff could render the defendants liable on the bond for any period by merely omitting to name a successor. But here his term having expired, the directors re-appointed Allen.

The bond in suit does not provide (as does the bond in some of the cases cited) that the obligors shall be responsible for malfeasance of William H. Allen "during the time he shall continue secretary," or "while he shall continue to act as secretary," or other like words. The recital is: "Whereas, William H. Allen *is* secretary," etc. Surely the obligors (sureties) did

not intend to bind themselves to answer for all defalcations of their principal, which might happen during his natural life, in case he should be re-appointed and act as secretary for the rest of his life.

Is that the meaning of their contract fairly interpreted? They were not compelled to anticipate that some other person than Allen would be appointed at the expiration of Allen's term.

Counsel for appellant concede that if, by the charter of the company or laws of the State, the office of Allen was limited to one year, the defendants would not be liable beyond the year, and that when the bond is general, but the period of the office limited by the by-laws of the company, the sureties are not liable for a default after the expiration of the limited time. (*Welch* v. *Seymour*, 28 Conn. 387; *Chelmsford* v. *Demarest*, 7 Gray, 1; *South Carolina* v. *Johnson*, 1 McCord, 41.) But it is contended that when "the tenure of office is until his successor is elected or qualified, or accepts—which may be a sufficient qualification—then the sureties are bound for a default occurring at any time before the principal is succeeded, or in the words of this court in 45 California, when (while) he is yet 'in office.'"

The case in 45 California, referred to by counsel (*Placer County* v. *Dickerson*, 45 Cal. 13), was an action on a county treasurer's bond. Dickerson was elected treasurer, to hold from the first Monday of March, 1866, to the 2d day of March, 1868. He continued in office until the 3d day of March, 1868, when he turned over the books, vouchers, moneys, etc., to his successor, who had demanded them the previous day. There is no pretense that his successor began to act as such, or had assumed the office on the 3d of March, when the defalcation occurred. It occurred while Dickerson assumed to act as treasurer under his election prior to the commencement of his term. The facts in that case were different from those in the present.

In this case William H. Allen was re-appointed—named as successor. The argument always returns to the question, "what does the contract mean?" It was the apparent intention of both parties that at the expiration of his year (if he was not sooner removed), some one should be named to succeed Allen as secretary, upon whose appointment the liability of the obligors

should cease, so that they should not be responsible for subsequent acts of the secretary. The plaintiff performed its duty in the premises by appointing Allen as his own successor. When he began to act under the re-appointment the liability of defendants on the bond ceased. As we have seen, it does not appear that the charter or any by-law fixed the term of secretary at one year or any definite term. The directors had power to appoint a secretary to hold until the further order of the board.

The liability of the defendant William H. Allen on *the bond*, is no greater than, nor is it different from, that of the other defendants. Of course he is liable in a direct action for moneys of the plaintiff he has misappropriated. But the liability of each of the defendants, who executed the specific contract, is the same.

A principal in a bond is no further bound than his sureties. (*Bigelow* v. *Bridge*, 8 Mass. 274.) Appellant's counsel suggests, "suppose a principal forged the name of a surety. The surety would not be liable but the principal would be." In that case the principal would be liable because he executed the bond; the alleged surety would not be liable because he did not execute it.

Judgment affirmed.

Ross, J., and McKee, J., concurred.