[S. F. No. 15585. In Bank.—December 26, 1935.]

CITY OF SAN JOSE (a Municipal Corporation), Petitioner, v. JOHN J. LYNCH, as City Clerk, etc., Respondent.

Archie Bowden for Petitioner.

Kirkbride & Wilson for Respondent.

WASTE, C. J.—By this proceeding in *mandamus* it is sought to compel the respondent, as City Clerk of the City of San Jose, to publish a resolution of intention as required. The respondent has continuously refused so to do upon the ground that said resolution of intention and the ordinance upon which it is predicated were without the authority and power of the city council to adopt and are therefore void and of no effect. The controversy arises out of the following facts:

In 1915 the City of San Jose adopted a freeholders' charter. Section 85 thereof provides that where, in the judgment of the city council, the cost of any public street improvement is to be paid by special assessment on private property, the general state law in force at the time shall govern and control and all proceedings shall be in conformity thereto. However, in 1933, and pursuant to that portion of section 6 of article XI of the state Constitution which authorizes municipalities to amend their charters so as to empower them "to make and enforce all laws and regulations in respect to *municipal affairs*, subject only to the restrictions and limitations provided in their several charters", the charter of the City of San Jose was amended by adding thereto section 2a, which reads as follows:

"The City of San Jose shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter; provided that nothing herein shall be construed to prevent or restrict the City from exercising or consenting to, and the City is hereby authorized to exercise any and all rights, powers and privileges heretofore or hereafter granted or prescribed by the general laws of the State; provided, also, that where the general laws of the

State provide a procedure for the carrying out and enforcement of any rights or powers belonging to the City, said procedure shall control and be followed unless a different procedure shall have been provided in this charter or by ordinance.

"It is the intention of the People of the City of San Jose in adopting this Charter amendment to take advantage of the provisions of the 1914 amendment to Section 6 of Article XI of the Constitution of the State of California, giving cities Home Rule as to municipal affairs."

Thereafter, and in 1934, the city council, under the authority granted to it by the new charter provision, adopted ordinance No. 2439, entitled "San Jose Improvement Procedure Ordinance". This ordinance sets forth a procedure for public improvements, substantially analogous to that specified in the Improvement Act of 1911 (Stats. 1911, p. 730, as amended), in many instances adopting by reference sections of the 1911 act. Section 7 of the ordinance provides that the city, having theretofore elected to take advantage of the constitutional provision giving cities "home rule" as to municipal affairs by adding section 2a, *supra*, to its charter, and the matters referred to in the ordinance being within the classification of municipal affairs, establishes the procedure therein outlined "as the exclusive procedure" applicable to such public improvements, and pursuant to the provisions of the new charter provision, "elects to have the doing of such public improvements governed by this ordinance, and any ordinance amendatory thereof, or supplemental thereto, together with the applicable provisions of its charter, instead of by the general laws of the State of California".

In July, 1935, the city council adopted a resolution approving plans and specifications for the improving of a certain street in the city, and on November 22, 1935, adopted its resolution of intention therefor, the latter providing that the work shall be done and the bonds therefor shall be issued in pursuance of the "Improvement Procedure Ordinance". The respondent city clerk, as stated above, refuses to publish the resolution of intention as required by section 3 of the "Improvement Procedure Ordinance", *supra*.

The effect of a city electing to avail itself of the "home rule" provisions of the Constitution is stated in *Civic Center Assn.* v. *Railroad Commission,* 175 Cal. 441, 448 [166 Pac.

351], in the following language: "By subdivision 51, as will be observed, the city has brought itself within the conditions of the amendment of 1914 to sections 6 and 8 of article XI of the Constitution. Thereupon, according to the terms of those sections of the Constitution, its powers over municipal affairs became all-embracing, restricted and limited by the charter 'only', and free from any interference by the State through general laws. . . . The result is that the city has become independent of general laws upon municipal affairs."

It is settled that the matter of opening, laying out and improving streets and the regulation of the manner of their use are municipal affairs upon which the charter, in so far as it makes provision therefor, is paramount to general law. (*Byrne* v. *Drain*, 127 Cal. 667 [60 Pac. 433]; *Hellman* v. *Shoulters*, 114 Cal. 136, 149 [44 Pac. 915, 45 Pac. 1057].)

It must therefore be concluded in the present proceeding that the several improvements designated in the "Improvement Procedure Ordinance", and the particular improvement specified in the resolution of intention, are, and each is, purely local and municipal in character and must be governed solely by pertinent municipal laws, in accordance with the general purport and intent of the "home rule" section (2a) of the charter, to the exclusion of general state laws, unless said section, or other charter provisions, suggest and require a different conclusion.

The respondent concedes that it was the intention of the people of the City of San Jose in adding section 2a to the charter to vest in the city council the power to legislate upon all matters of municipal affairs to the exclusion of general law. However, in denying the validity of the "Improvement Procedure Ordinance" and the resolution of intention, he assumes the position that this objective was not accomplished in so far as the improvement of public streets by special assessment is concerned because of the proviso appearing in section 2a and reading "subject only to the restrictions and limitations provided in this charter". He then refers us to section 85 of the charter, mentioned above, and included in the charter when originally adopted in 1915, to the effect that the general laws of the state in force at the time shall govern all special assessment street improvement proceedings. It is argued that section 85 is a restric-

tion and limitation provided in the charter, within the meaning of the proviso in section 2a, and though earlier in point of time, is specific in character and should prevail over the later and more general provisions of section 2a.

We cannot accept the interpretation placed by respondent upon the proviso appearing in section 2a, *supra*. The proviso is couched in the express language of the constitutional provision, *supra,* which authorizes "home rule" for municipalities, "subject only to the restrictions and limitations provided in their several charters". The framers of section 2a could not have intended that any other or different meaning be given the proviso than that intended therefor in the constitutional provision and it should not be given any greater significance. The proviso was unnecessary to section 2a, for without it the section would still be subject to the clause as used in the Constitution, the latter being the mode and measure of the power. With the proviso out of section 2a, but the section still subject to it as used in the Constitution, the inescapable conclusion from the broad language employed in the balance of the section is that it was intended to invest in the city complete and exclusive power of legislation and control over purely municipal affairs.

The other portions of section 2a, *supra,* preserve to the city the right to do anything authorized by state law and where a procedure is provided by state law it shall govern "unless a different procedure shall have been provided in this charter or by ordinance". This latter is expressed in the future perfect tense—"shall have been"—and not in the past tense—"has been"—and must therefore be held not to refer to the provisions of section 85, included in the charter at the time of its adoption, to the effect that street improvements by special assessment shall be done under the general law, but rather to any procedure thereafter set up either in the charter or by ordinance.

The purpose underlying section 2a is found in the last sentence thereof to the effect that "It is the intention of the people . . . in adopting this . . . amendment to take advantage of the provisions of the 1914 amendment to . . . the Constitution . . . , giving cities Home Rule as to municipal affairs."

Section 2a presents a definite attempt to adopt "home rule". The section is specific in this respect. It is general in that it is intended as an amendment of the entire charter,

rather than amending separately each section relating to matters of purely municipal character. It must therefore be construed as having the effect of causing section 85 to provide for the governing of special assessment street improvements by general law "unless a different procedure shall have been provided" at the time of the improvement in the charter or by ordinance. In the present proceeding we have a "different" procedure provided solely and exclusively by the "Improvement Procedure Ordinance" adopted pursuant to section 2a of the charter, and upon which ordinance the resolution of intention here involved has been predicated.

Our construction of the pertinent charter provisions finds ample support in the authorities. It is axiomatic that every provision of the charter should be construed in the light of the whole instrument and of each and every other provision thereof, keeping in view at all times the intent underlying the same. In 59 C. J. 999, 1000, section 596, it is stated that "In the consideration of conflicting provisions in a statute, the great object to be kept in view is to ascertain the legislative intent, and a construction which best secures the rights of all the parties affected has been held a proper construction. . . . General and special provisions in a statute should stand together, if possible, but where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part the particular provisions must govern, unless the statute as a whole clearly shows the contrary intention. . . . ''

Here, as we have shown, there has been a definite attempt by recent amendment of its charter to give to the City of San Jose unfettered "home rule" as to purely municipal affairs. Construing sections 85 and 2a of the charter as we have in this decision, gives full and complete expression to this purpose and, in accordance with settled rules of construction, properly gives effect to the provision last in point of time by limiting the earlier provision (sec. 85) to special assessment street improvements for which a procedure differing from the general state law has not been provided by the charter or ordinance.

Let a peremptory writ issue as prayed.

Shenk, J., Curtis, J., Conrey, J., Langdon, J., and Seawell, J., concurred.