[L. A. No. 19641.   In Bank.   Nov. 10, 1947.]

HARTFORD ACCIDENT & INDEMNITY CO. (a Corporation), Appellant, v. CITY OF TULARE et al., Respondents.

Maddox & Abercrombie and James K. Abercrombie for Appellant.

I. H. Ham, City Attorney, for Respondents.

CARTER, J.—Plaintiff appeals from a declaratory judgment rendered in an action involving a dispute between it and defendant, city of Tulare, concerning the rights and obligations under an official bond furnished by defendant Besse, holding the office of city treasurer, in which plaintiff is the surety.

There being a vacancy in the office of city treasurer, in June, 1942, by reason of the death of the incumbent, Besse was appointed to fill that vacancy until the next general municipal election. Under the Charter of Tulare (Stats. 1923, p. 1958, as amended) the term of the deceased treasurer would expire at the time of the next municipal election in

1943. Besse qualified for the office by taking oath and filing an official bond (hereafter referred to as first bond) in the sum of $50,000, in which plaintiff was surety. The bond after stating the amount for which the surety was bound, recites: ''Whereas, the above bounden [Besse] was heretofore elected or appointed City Treasurer in and for the City of Tulare . . . and is required to furnish bond.

''Now, Therefore, if the said Principal shall for the period commencing June 2nd, A.D. 1942 and ending April 18th A.D. 1943 well, truly and faithfully perform all official duties now required of him by any law of the State of California, then the above obligation shall be null and void; otherwise to remain in full force and effect.''

On April 13, 1943, Besse was duly elected treasurer for a four-year term commencing on April 13, 1943. After the election she took her oath of office. On May 18, 1943, the City Council of Tulare duly adopted an ordinance fixing the treasurer's official bond at $10,000. On August 19, 1943, Besse filed with the city and obtained approval of an official bond (hereafter referred to as second bond) in the sum of $10,000 effective as of April 19, 1943, in which Maryland Casualty Company (a surety different than on the first-mentioned bond) was the surety. No other than the above-mentioned bonds have been furnished by Besse.

In this action plaintiff asserts that the first bond was effective and in force and binding upon it at all times that Besse continued in the office as city treasurer and until a new $50,000 bond was furnished by her; that the ordinance fixing the bond at $10,000 is invalid as conflicting with the city charter making the second bond void; and that Besse is liable for the annual premium on the first bond. Defendants assert that the first bond expired on April 18, 1943, and that plaintiff's liability as surety for Besse thereupon ceased.

The court found and determined that the ordinance of May 18, 1943, was valid and hence the second bond was proper; that while the first bond expired on April 18, 1943, it remained binding on plaintiff until August 19, 1943, when the second bond was filed, but no premiums were payable for the period from April 13, to August 19, 1943.

The charter of Tulare (Stats. 1923, p. 1508) provides for the elective office of city treasurer. (Charter, § 4.) ''The term of office of each of said elective officers shall be Four (4) years, and until his successor is elected and qualified.'' (Charter, § 4.) A vacancy is filled by appointment by the

city council. The "appointee to hold office until the next general municipal election" when a successor shall be elected for the unexpired term. (Charter, § 9.) If an officer fails "to qualify" his office "shall thereupon become vacant." (Charter, § 9.)

With regard to the official bond to be furnished by the treasurer the provisions of the charter are conflicting. Dealing generally with official bonds it is provided in section 6 thereof that: "The Auditor and the Treasurer, before entering upon the duties of their respective offices, shall each give and execute to the city a bond with a responsible surety company in such penal sum as the City Council may by ordinance direct, conditioned upon the true, honest and faithful performance of the duties of such offices." (Charter, § 6.) Then the bond of the police judge is fixed. Next "The bond of the Auditor, the Treasurer and the Police Judge shall be approved by the Council and filed with the City Clerk." (Charter, § 8.) Treating specifically with the duties and obligations of the treasurer and naming him as custodian of the public funds it is provided in section 33 of the charter that: "Before assuming the duties of his office he shall file with the City Clerk a surety company bond in the penal sum of Fifty Thousand Dollars ($50,000.00) conditioned for the true, faithful and honest performance of his duty. The premium on this bond shall be paid by the city." There is a square conflict between these provisions. In one the amount of the official bond is to be fixed by the city council and in the other the charter fixes the amount of the bond.

█ In the construction of city charter provisions the rules of statutory construction apply. (*Braun, Bryant & Austin* v. *McGuire,* 201 Cal. 134 [255 P. 808].) Where there is a conflict between two provisions in a statute a specific or special provision controls over a general one (*City of San Jose* v. *Lynch,* 4 Cal.2d 760, 766 [52 P.2d 919]; *Division of Labor Law Enforcement* v. *Moroney,* 28 Cal.2d 344 [170 P.2d 3]; *People* v. *Moroney,* 24 Cal.2d 638 [150 P.2d 888]; 23 Cal.Jur. 762); and if there is an irreconcilable conflict, "as a last resort it would be appropriate to apply the rule that the later provision in point of position controls the earlier provision although both are in the same statute and passed at the same time." (*People* v. *Moroney,* 24 Cal.2d 638, 645 [150 P.2d 888].)

█ In the instant case the provision in the first part of the charter (§ 6) refers to both the auditor and treasurer in

conferring upon the council the power to fix their respective bonds. The later provision in point of position (charter, § 33) embraces the treasurer only. Thus the latter controls and the official bond of the treasurer cannot be less than $50,000. It follows that the ordinance purporting to authorize a $10,000 bond cannot stand, at least to the extent that it limits the amount of the bond required to qualify for that office. Likewise, the ensuing result is that Besse has as yet failed to qualify for the term of office as a successor to herself.

Referring to the term of office of the treasurer it will be recalled that the charter first provides when dealing with the several elective· officers (including the treasurer) that their term of office is four years and until their successor is elected and qualified. Secondly, when speaking of the appointment to fill a vacancy he is said to hold office until the next general election. Nothing is said about serving until his successor is chosen and qualifies. It is doubtful that a proper construction of the charter would lead to the conclusion that the first-mentioned phrase does not also apply where the officer is appointed to fill a vacancy as distinguished from the situation where he is elected. ▇ However that may be, adequate reason exists to compel the result that when the treasurer is appointed he holds office until his successor is chosen and qualifies. First, it is the ·general rule, with possibly certain exceptions (*People* v. *Campbell;* 138 Cal. 11 [70 P. 918]) not here pertinent, that when there is no ex-́ pression in the statute to the contrary, a public· officer who continues to perform the duties of the office and holds office beyond the term for which he was elected or appointed, holds office until his successor is selected and qualifies. The basis for that rule is the policy against having a vacancy in public office—having a gap between successive office holders. (*People* v. *Oulton,* 28 Cal. 44; 46 C.J. 968; 43 Am.Jur., Public Officers, § 162; 50 L.R.A.N.S. 365, 366.) There being nothing in the charter to the contrary this rule would apply, thus making Besse a holdover from her prior appointment. ▇ Second, the charter declares: "All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provjsions of this charter or with ordinances or resolutions hereafter enacted, shall be applicable to the city." (Charter, § 72.) The general law provides: "Every officer whose term has expired shall continue to discharge the duties of his office until his successor has qualified." (Gov. Code, § 1302, formerly Pol. Code,

§ 879.) There being no inconsistency between section 1302 and the charter, it controls and Besse held over.

This brings us to the question of the duration of the obligation of a surety on an official bond furnished by the officer where he is elected as his own successor, but fails to qualify for the successive term, yet continues in the duties of the office. That the obligation continues until the successor qualifies, or the holdover ceases to occupy the office, or some other event breaks the holding over, is made clear by the statute. "Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein for: (a) . . . Any and all breaches of the conditions thereof committed *during the time such officer continues to discharge any of the duties of or hold the office,* and whether such breaches are committed or suffered by the principal officer, his deputy or clerk. . . ." [Emphasis added.) (Gov. Code, § 1504, formerly Pol. Code, §§ 959, 960.) By virtue of the provision of the charter above discussed (§ 72) the foregoing applies to the treasurer's bond. The terms of a statute dealing with official bonds fixing the obligation of the surety within the penal sum specified are read into the bond and become a part of it. (See *City of Oakland* v. *Snow,* 145 Cal. 419 [78 P. 1060] ; *Mill Valley* v. *Massachusetts Bonding etc. Co.,* 68 Cal.App. 372 [229 P. 891] ; *Bridges* v. *Price,* 95 Cal.App. 394 [273 P. 72] ; *Anthony* v. *Van,* 96 Cal.App. 523 [274 P. 563] ; *San Luis Obispo County* v. *Farnum,* 108 Cal. 562, 566 [41 P. 445] ; *Fresno Enterprise Co.* v. *Allen,* 67 Cal. 505, 508 [8 P. 59] ; 23 Cal.Jur. 1017-18; 109 A.L.R. 501.) The authorities generally hold that the obligation of a surety on an official bond continues as long as the holdover officer remains in office and until his successor has qualified. (See *Placer Co.* v. *Dickerson,* 45 Cal. 12; Rest., Security, § 180(a); 43 Am.Jur., Public Officers, § 431; 81 A.L.R. 10, 36.) A contrary result was reached in *People* v. *Aikenhead,* 5 Cal. 106. However, the court there either failed to give consideration to the statutory provisions such as sections 1302 and 1504 of the Government Code or did not have the benefit of them. In *Fresno Enterprise Co.* v. *Allen,* 67 Cal. 505 [8 P. 59], and *Wood* v. *Lowden,* 117 Cal. 232 [49 P. 132], the officer had qualified and commenced to serve during the succeeding term. He was not a holdover. *Brown* v. *Lattimore,* 17 Cal. 93, involved an extension by the Legislature of the term of office after the bonds was given, and *Hu-*

*bert* v. *Mendheim,* 64 Cal. 213 [30 P. 633], dealt with a deputy who, it considered, was reappointed by implication by his principal when he stayed for the second term of his principal. None of these cases are analogous to the situation here involved.

For the foregoing reasons the judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.